**John J. McCARTHY, Plaintiff–Appellant,**

v.

**George BRONSON, Warden, Lt. Steve T. Ozier, Officer Paul Lusa, and Officer Michiewicz, Individually and in their official capacities as Officers of the Connecticut Department of Correction, Defendants–Appellees.**

**No. 651, Docket 89–2389.**

United States Court of Appeals, Second Circuit.

Submitted March 1, 1990.

Decided June 22, 1990.

John J. McCarthy, Leavenworth, Kan., pro se.

Clarine Nardi Riddle, Atty. Gen., Steven R. Strom, Asst. Atty. Gen., Hartford, Conn., for defendants-appellees.

Before OAKES, Chief Judge, NEWMAN and WALKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

John J. McCarthy, a state prisoner, appeals *pro se* from the June 19, 1989, judgment of the District Court for the District of Connecticut (José A. Cabranes, Judge) in favor of the defendant state prison officials. McCarthy sued under 42 U.S.C. § 1983 (1982), alleging unlawful removal from his cell and use of excessive force. The judgment was entered after a hearing conducted by Magistrate F. Owen Eagan. The case is complicated by some uncertainty as to the authority of the Magistrate in recommending proposed findings to the District Judge and the authority of the District Judge in approving those recommended findings. The appeal challenges procedural irregularities concerning the reference to the Magistrate, the lack of a jury trial, the denial of a free copy of a hearing transcript, and the merits of the fact-finding. We affirm.

Before setting forth the procedural facts, it will be helpful to outline pertinent provisions of the Federal Magistrates Act, 28 U.S.C. §§ 631–39 (1982 & Supp. V 1987). Four types of reference from a district judge to a magistrate are implicated in this case. First, subsection 636(b)(1) permits a judge to designate a magistrate to handle pretrial matters, with the Magistrate authorized by subsection 636(b)(1)(A) to rule on most pretrial motions and authorized by subsection 636(b)(1)(B) to recommend rulings on motions excepted from subsection 636(b)(1)(A). Second, subsection 636(b)(1)(B) also permits a judge to desig-

nate a magistrate "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court ... of prisoner petitions challenging conditions of confinement." Third, subsection 636(b)(2) permits a judge to designate a magistrate "to serve as a special master pursuant to the applicable provisions of [Title 28] and the Federal Rules of Civil Procedure." This subsection also permits a judge to designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to Fed.R.Civ.P. 53(b), which limits use of a master to exceptional cases. Fourth, subsection 636(c) permits a magistrate, upon consent of the parties, to try any civil case and render a judgment.

## Background

Plaintiff's original complaint, filed in April, 1983, alleged that various officials at the Connecticut Correctional Institution at Somers had ordered or carried out his forcible removal from his prison cell by means of tear gas and excessive force, in violation of the Eighth and Fourteenth Amendments. The complaint named only Warden Robinson as a defendant and made no demand for a jury trial. Shortly after the complaint was filed, Judge Cabranes referred the case to Magistrate Eagan for pretrial proceedings under 28 U.S.C. § 636(b)(1)(A), a reference that was soon broadened. On February 28, 1985, in open court the plaintiff and defendant's counsel executed a standard consent form, agreeing to have the case tried by a magistrate, pursuant to 28 U.S.C. § 636(c), and electing to take any appeal from the magistrate's judgment to the district judge, pursuant to § 636(c)(4). At that time, the Magistrate explained to McCarthy that the trial would be held by the Magistrate at Somers Prison without a jury. McCarthy did not object. Conducting non-jury trials at the prison frequently benefits a prisoner-claimant, since witnesses and documents, needed unexpectedly, are more accessible. On March 5, 1985, Judge Cabranes entered an order

referring the case to Magistrate Eagan "for all further proceedings and the entry of judgment in accordance with Title 28, § 636(c)."

On April 12, 1985, McCarthy filed an amended complaint. This complaint added several defendants but did not alter the substantive allegations. It made no jury demand. On July 2, 1985, he filed a second amended complaint, again adding parties but not altering his substantive allegations. This complaint contained a jury demand. Defendants filed their answer to the second amended complaint on August 26, 1985. No answer had been filed to the prior complaints.

On October 23, 1986, defendants filed papers opposing plaintiff's jury demand, contending, among other things, that McCarthy had agreed to a non-jury trial before the Magistrate on February 28, 1985. On December 22, 1986, Judge Cabranes ruled that plaintiff was not entitled to a jury trial; he relied on the absence of a timely jury demand, see Fed.R.Civ.P. 38(b), (d), and noted that the right to a jury trial, once waived, is not revived by an amended complaint that raises no new issues, see *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310–11 (2d Cir.1973) (in banc). On October 22, 1987, McCarthy moved for a jury trial; the Magistrate recommended denial based on the District Judge's 1986 ruling, and Judge Cabranes adopted this recommendation on January 29, 1988.

On March 24, 1988, plaintiff appeared before the Magistrate for a bench trial at Somers Prison. At the start of the trial, the Magistrate sought a second written consent to proceed under subsection 636(c), even though a first consent had been executed on February 28, 1985. McCarthy refused. Apparently, the Magistrate construed McCarthy's refusal to sign the second consent form as a motion to withdraw the original consent and granted the motion. Magistrate Eagan then conducted an eight-day trial at the conclusion of which he issued a decision entitled "Recommended Findings of Fact and Memorandum of Decision." He recommended detailed findings of fact and ultimate conclusions that exces-

sive force had not been used and that no unlawful action had occurred. When the matter reached the District Court, Judge Cabranes accepted the recommended findings and ordered judgment for the defendants. His endorsement of the Magistrate's proposed findings reflected the Judge's understanding that the matter had been referred under subsection 636(b)(1), *i.e.*, referred for recommended findings. However, in ruling on post-judgment motions, Judge Cabranes amended the citation to subsection 636(b)(1) and stated that after allowing the plaintiff to withdraw his consent, Magistrate Eagan had "essentially act[ed] as a special master pursuant to his powers under 28 U.S.C. § 636(b)(2) and Rule 1(C)(5) of the Local Rules." Judge Cabranes then adopted the Magistrate's recommended findings, acting under Fed.R. Civ.P. 53(e)(2), which requires a district judge to accept a special master's findings of fact unless clearly erroneous. Finally, the District Judge added, "Even upon a *de novo* determination I would reach the same conclusions as the Magistrate." All motions for post-judgment relief were denied.

## Discussion

The tangled sequence of events has created some problems, but none that impairs the validity of the judgment rejecting plaintiff's claims on their merits.

1. *The Authority of the Magistrate.* The parties' February 28, 1985, consent to have the matter tried by the Magistrate pursuant to subsection 636(c) was entirely valid. Once given, that consent may be withdrawn on the Court's own motion "for good cause shown" or on request of a party who shows "extraordinary circumstances" warranting such relief. 28 U.S.C. § 636(c)(6); *see Fellman v. Fireman's Fund Insurance Co.*, 735 F.2d 55, 57–58 (2d Cir.1984). No such circumstances existed in this case. The Magistrate therefore could have proceeded under the original 636(c) reference, made findings, and entered judgment. However, he elected not to do so, preferring instead to permit McCarthy to withdraw consent to the 636(c) reference.

■ Having vacated the 636(c) reference, the Magistrate then used the authority of subsection 636(b)(1)(B) to conduct a hearing and recommend proposed findings of fact concerning "prisoner petitions challenging conditions of confinement." Whether he acted permissibly is our initial inquiry. The matter had originally been referred to the Magistrate for pretrial purposes, under the authority of subsections 636(b)(1)(A) and (B). Arguably, vacating the 636(c) reference left the Magistrate with only the pretrial assignment he had originally been given, but we do not think he was required to take such a narrow view of his authority. With complete propriety, he could have declined to vacate the 636(c) consent and adjudicated the merits definitively. He was surely entitled to take the lesser step of hearing the evidence and submitting recommended findings to the District Judge. The parties' consent is not required for using that procedure, and it is obvious, from the District Judge's subsequent approval of the Magistrate's findings, that the Judge welcomed the Magistrate's help. It would be a needless ritual now to require the District Judge formally to refer the matter under the "prisoner petition" clause of subsection 636(b)(1)(B). The Judge's adoption of the recommended findings demonstrates that the Magistrate was acting entirely in conformity with authority the Judge wished him to exercise.

■ A more substantial question is whether McCarthy's lawsuit is a petition "challenging the conditions of confinement" within the meaning of subsection 636(b)(1)(B). Subsection 636(b)(1)(B) was added in 1976 as part of a broadening of the authority of magistrates. Act of Oct. 21, 1976, Pub.L. 94–577, 90 Stat. 2729. The House Report does not explain the category "prisoner petitions challenging conditions of confinement" but does refer to "petitions under section 1983 of Title 42." H.R.Rep. No. 1609, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6171. Most courts have construed the phrase broadly to include almost any complaint made by a prisoner against prison officials, *see Branch v. Martin*, 886 F.2d 1043, 1045 n. 1 (8th Cir.1989)

(collecting cases). However, there is a minority view that has focused on the phrase "conditions of confinement" and concluded that it covers only challenges to pervasive prison conditions and excludes claims concerning specific episodes of misconduct by prison officials. *See e.g., Houghton v. Osborne*, 834 F.2d 745 (9th Cir.1987); *Hill v. Jenkins*, 603 F.2d 1256, 1259 (7th Cir.1979) (Swygert, J., concurring).

We see no reason why a Magistrate with clear authority to hold hearings and recommend findings as to the unconstitutionality of continuing prison conditions may not perform a similar function as to specific episodes of unconstitutional conduct by prison officials. The phrase "conditions of confinement" appears not to have been selected as a limitation to preclude episodes of misconduct, but rather as a generalized category covering all grievances occurring during prison confinement. This meaning emerges from comparing the phrase with the immediately preceding category in subsection 636(b)(1)(B) that covers "applications for posttrial relief made by individuals convicted of criminal offenses." Congress evidently wished magistrates to assist district judges with respect to all prisoner claims and selected phrases to describe the two broad categories of prisoner claims cognizable under 28 U.S.C. §§ 2254, 2255 (challenges to convictions) and 42 U.S.C. § 1983 (challenges to conditions of confinement). *See generally Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

The Magistrate was therefore entitled to hold a hearing on McCarthy's complaint and submit recommended findings to the District Judge.

■ 2. *The Authority of the District Judge.* After initially viewing the Magistrate's proposed findings as submitted under subsection 636(b)(1) and adopting them, Judge Cabranes altered his view in his post-judgment ruling and considered the Magistrate's findings to be "essentially" those of a special master acting under subsection 636(b)(2). Then, explicitly referring to Rule 53(e)(2) of the Federal Rules of

Civil Procedure, governing judicial consideration of a master's findings in a nonjury case, the District Judge accepted the findings as not clearly erroneous, the standard under Rule 53(e)(2). Had the Judge stopped there, his ruling would have been infirm for two reasons.

First, the Magistrate made and forwarded his findings under subsection 636(b)(1), and that subsection requires *de novo* review of any proposed findings to which objection was made. Though we are confident that the Magistrate would exercise the same high degree of care and conscientiousness whether his findings were to be reviewed *de novo* or under a clearly erroneous standard, we would have considerable doubt whether proposed findings made in the expectation of plenary review would be valid, absent reassessment by the recommender, if in fact they received review only under a less rigorous standard. Second, we would also doubt whether this fairly straightforward section 1983 suit would qualify for reference to a special master under the exacting standards of Rule 53(b) (in nonjury matters "a reference shall be made only upon a showing that some exceptional condition requires it" except where a claim requires an accounting or a difficult computation of damages).

■ Fortunately, the District Judge did not confine his review to the narrow scope appropriate for findings of a special master. Judge Cabranes explicitly determined that upon a *de novo* determination he "would reach the same conclusions as the Magistrate regarding the matters to which there has been objection." This confirmation of the discharge of his responsibilities, as he had originally exercised them under subsection 636(b)(1) when he first adopted the proposed findings, eliminates all question as to the validity of the findings.

■ 3. *Waiver of Jury Trial.* McCarthy contends that he was entitled to a jury trial and never waived this right. The District Judge denied McCarthy a jury on the ground that he had not made a timely demand, pointing out that the initial complaint did not claim a jury and that the second amended complaint, making the de-

mand, added no new substantive allegations. The Civil Rules require a demand for jury trial on an issue no later than ten days "after the service of the last pleading directed to such issue." Fed.R.Civ.P. 38(b). Failure to make a timely demand constitutes a waiver. *Id.* 38(d). However, "the last pleading directed to" an issue is not the pleading that raises the issue, it is the pleading that contests the issue. Normally, that pleading is an answer, or, with respect to a counterclaim, a reply, *id.* Rule 12(a); *see 5 Moore's Federal Practice* ¶ 38.39[2], at 38–367 (2d ed. 1988). In this case, no answer was filed to either the original complaint or the first amended complaint. The answer to the second amended complaint was not filed until August 26, 1985, after plaintiff had made a jury demand. There was thus no waiver by reason of a late demand.

■ Nor, as the defendants contend, relying on *Lovelace v. Dall,* 820 F.2d 223, 227–29 (7th Cir.1987), was there a waiver because McCarthy did not object to proceeding without a jury at the start of the hearing before the Magistrate. *See also Royal American Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1018–19 (2d Cir.1989). *Lovelace* deemed the plaintiff to have acceded to a bench trial by not objecting at its start, but the case differs significantly from ours because the issue of entitlement to a jury was never litigated. By contrast, McCarthy's jury claim was challenged by the defendants and adjudicated by the District Court. Once that adverse ruling was made, McCarthy was not required to renew his jury demand at the start of the Magistrate's hearing in 1988.

■ Nevertheless, the defendants are correct in urging that McCarthy waived entitlement to a jury in the proceedings before the Magistrate in 1985 when he consented to proceeding under subsection 636(c). At that time, the Magistrate explained to McCarthy in open court that the proceedings would be conducted at the prison as a bench trial without a jury. With that understanding, McCarthy agreed to the subsection 636(c) procedure. This agreement was consent to a non-jury trial

under Rule 39(a). The fact that the Magistrate, three years later, permitted McCarthy to renege on his agreement to have the issues tried by the Magistrate under subsection 636(c) and instead made recommended findings subject to *de novo* review by the District Judge under subsection 636(b)(1) does not undermine the waiver of a jury. McCarthy, though not entitled to any change, succeeded in changing the identity of the judicial officer with final fact-finding responsibility; he did not thereby rescind his consent to have the facts found by a judicial officer.

 Nor is the waiver invalid because it occurred prior to the defendants' answer. There is no starting time for jury waivers. They may be agreed to even before a lawsuit arises. *See Rodenbur v. Kaufmann,* 320 F.2d 679, 683–84 (D.C.Cir. 1963). Though a litigant might have a basis for obtaining relief from a jury waiver where a subsequent pleading alters the nature of the issue to be decided from what it appeared to be at the time of the waiver, the defendants' answer here had no such effect.

 4. *Free Transcript.* Judge Cabranes denied plaintiff's request for a free transcript of the hearing before the Magistrate, relying on 28 U.S.C. § 753(f) (free transcripts not required where issues frivolous). Though the procedural issues in this case are not frivolous, their resolution does not require examination of the evidence presented at the hearing before the Magistrate, and it was not error to deny McCarthy a free copy of the transcript of that hearing.

5. *Fact-finding.* McCarthy's challenge to the factfinding is without substance. He contends that prison officers planted a knife in his cell as a pretext to remove him. The Magistrate and the District Judge were entitled to reject this claim.

We have considered McCarthy's remaining contentions and find them without merit. The judgment of the District Court is affirmed.