**T.S. Parent and Guardian of S.S., Plaintiff,**

v.

**RIDGEFIELD BOARD OF ED., Defendant.**

**No. B 91–473 (TFGD).**

United States District Court, D. Connecticut.

Oct. 20, 1992.

William Laviano, Donna Ruhling–Laviano, Joseph LoCascio, Ridgefield, CT, for plaintiff.

Lawrence Campane, Deborah Nathan, Hartford, CT, for defendant.

## MAGISTRATE'S OPINION

SMITH, United States Magistrate Judge.

The plaintiff T.S., parent and guardian of S.S., brought this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against the defendant, the Board of Education of the Town of Ridgefield ("Board"), appealing the state hearing officer's ruling and claiming that defendant denied T.S. due process and S.S. a Free Appropriate Public Education (FAPE). The plaintiff has moved for summary judgment, arguing that the defendant failed to properly "consider" an independent educational evaluation of S.S. when developing his Individualized Educational Program ("IEP"), and that the Planning and Placement Team ("PPT") meeting was "censored" and "orchestrated". The defendant cross-moved for summary judgment, contending that the board properly considered the evaluation. For the following reasons, the defendant's motion for summary judgment should be granted and the plaintiff's motion should be denied.

### Facts

S.S. has a language based learning disability first identified in 1981 by the Ridgefield Public School system. He presently attends Rumsey Hall School in Washington, Connecticut where his progress has been impressive. In anticipation of S.S.'s graduation from Rumsey Hall, a PPT meeting was convened on June 12, 1990 for the purpose of developing S.S.'s IEP pursuant to Conn.Bd. of Educ.Reg. § 10–76d–9. Development of the IEP was postponed, however, pending the results of a parent-initiated independent psychological and educational evaluation performed at Board expense.

On July 26 and August 3, 1990, Dr. Frances Sink, a clinical psychologist unaffiliated with the Board performed an evaluation of S.S. In her report, Dr. Sink concluded that based upon Rumsey Hall's small overall size, low student-teacher ratio, frequent feedback and individual tutorials, a change in academic programs would not be advised.

Due to billing and communication problems, distribution of Dr. Sink's report was delayed many months. Dr. Michael Mendelson, Ridgefield's Director of Special Education, received the report on April 26, 1991 and reviewed it prior to the PPT. While the parties disagree as to when Kenneth Satir, Ridgefield's systemwide psychologist, first saw the report, it is undisputed that Dr. Satir reviewed the report at the PPT.

S.S.'s PPT was reconvened on May 24, 1991. In addition to Dr. Mendelson, Dr. Satir, and S.S.'s mother, the PPT included James Leonard, Ridgefield's Administrator of Outside Placement, Irv Barlia, Special Education Guidance Counselor, RoseMary Fredrick, Ridgefield High School's Special Education Department Chairman, Barbara Baker, secretary to plaintiff's counsel, and Diedre Aarons, PPT Secretary. Dr. Sink was not invited by either the Board or S.S.'s mother and representatives of Rumsey Hall declined to attend. Of the various PPT members in attendance, only Dr. Mendelson, Dr. Satir, and S.S.'s mother had copies of Dr. Sink's report.

It is undisputed that Dr. Satir read the social-emotional findings and summarized other portions of Dr. Sink's report to the PPT. Against the wishes of S.S.'s mother and contrary to the recommendation of Dr. Sink, the PPT determined that S.S. would attend Ridgefield High School. Also undisputed, the minutes from the PPT indicate that S.S.'s mother discussed the reasons she believed that S.S. should remain at Rumsey Hall, including the small class size, individual attention paid to S.S., and immediate problem solving.

Beyond these facts there is little agreement. Dr. Mendelson claims that the members of the PPT discussed Dr. Sink's report with regard to the child's emotional functioning and that Dr. Satir answered questions about the report. In contrast, S.S.'s mother testified that Dr. Sink's report was never discussed beyond Dr. Satir's sum-

mary. The PPT concluded that S.S. could receive an appropriate education at Ridgefield High School and an IEP to that effect was developed.

Pursuant to 20 U.S.C. § 1415(b)(2), the plaintiff appealed the PPT's decision to a state board of education hearing officer. The plaintiff alleged a denial of due process at the PPT meeting as a result of the PPT's failure to consider Dr. Sink's Independent Evaluation. Over the defendant's objection, the plaintiff chose not to challenge the appropriateness of S.S.'s educational placement at the administrative hearing. In an opinion dated August 13, 1991, the hearing officer rejected plaintiff's appeal, concluding that the PPT properly considered Dr. Sink's evaluation. In response, plaintiff brought this action and now moves for summary judgment.

*Discussion*

### I.

■ Fed.R.Civ.P. 56 directs the entry of summary judgment only where the moving party sustains its burden of showing both that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The failure to establish either of these things, or to dispel uncertainty as to the true state of the material facts, defeats a Rule 56 motion. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

Similarly, "[i]f the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate.'" *National Union Fire Insurance Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). The "mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp (Motors Holding Div.),* 758 F.2d 839, 840 (2d Cir.1985).

■ In considering a motion for summary judgment, the court's function is not to resolve factual issues, but merely to determine as a threshold matter whether there are unresolved issues of material fact to be tried. *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1319–1320 (2d Cir.1975). When making this determination, "[a]ll reasonable inferences and any ambiguities are drawn in favor of the non-moving party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

### II.

Congress' express purpose in enacting 20 U.S.C. § 1400 *et seq.,* the Education of the Handicapped Act ("EHA"), now the Individuals with Disabilities Education Act (IDEA), was "to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected ..." 20 U.S.C. § 1400(c).

The *modus operandi* of IDEA is the Individualized Education Plan (IEP), a comprehensive written statement of the educational needs of a child with a learning disability which contains the specialized instruction and related services designed to meet those needs. *Burlington School Committee v. Department of Education,* 471 U.S. 359, 368, 105 S.Ct. 1996, 2001–02, 85 L.Ed.2d 385 (1985); § 1401(a)(19). Through the Code of Federal Regulations, IDEA mandates that IEP's be developed in meetings between school district representatives, teachers, parents and whenever appropriate, the child, and reviewed at least annually. 34 C.F.R. §§ 300.343; 300.344.

To accomplish its goal of providing children with learning disabilities a free appropriate public education (FAPE), IDEA "establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe,* 484 U.S.

305, 311–12, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988). "[F]ailure to meet [IDEA'S] procedural requirements are adequate grounds by themselves for holding that the school board failed to provide a FAPE." *Hall v. Vance Cty. Bd. of Educ.*, 774 F.2d 629, 635 (9th Cir.1985).

Under IDEA, any decisions regarding a child's IEP or subsequent modifications to an IEP require full parental participation and should be reached by consensus. 34 C.F.R. § 300.503. "In the context of the EHA, participation means something more than mere presence; it means being afforded the opportunity to be an equal collaborator, whose views are entitled to as much consideration and weight as those of other members of the team in the formulation and evaluation of their child's education." *V.W. v. Fravolise*, 131 F.R.D. 654, 659 (D.Conn.1990).

In practice, however, the relationship between the school board and parents may often become adversarial, thus rendering consensus futile "with respect to issues whose intensely emotional nature makes reconciliation impossible." *Doe By Gonzales v. Maher* 793 F.2d 1470, 1489 (9th Cir.1986). It was precisely because Congress recognized the potential for disagreement between school boards and parents that the procedural and substantive guarantees of IDEA were created.

Pursuant to 20 U.S.C. § 1415(b), states are free to establish procedures consistent with IDEA. Under Connecticut law, when a child is initially identified as learning disabled, a PPT meeting is convened to develop an IEP for that child. Conn.Bd. of Educ.Reg. § 10–76d–11(a). Subsequent developments or modifications in a child's IEP may be raised at any time by the parents, provided that a request for review is made to the school board and that the child's educational performance indicates the need for such review. Conn.Bd. of Educ.Reg. § 10–76d–11(b).

Another procedural safeguard provided by IDEA is the parents' right to obtain an independent educational evaluation of the child. § 1415(b)(1)(A). In Connecticut, parents have a right to obtain such an evaluation "at public expense if the parents disagree with an evaluation obtained by the board of education." Conn.Bd. of Educ. Reg. § 10–76d–9. Once an independent evaluation is performed at the parent's request, both federal and Connecticut regulations require it to be "considered" by the PPT in any decision regarding a child's FAPE.[1]

### III.

■ Although both the plaintiff and defendant agree that a PPT must consider an independent evaluation obtained by the parents at board expense prior to determining the appropriateness of a child's current educational placement, there remains considerable disagreement between the parties as to the proper meaning of "consider" under the federal and state regulations implementing IDEA. The pivotal issue before the court is whether as the plaintiff asserts, due process requires that each and every PPT member be presented with and read an evaluation in order for it to be "considered" within the meaning of 34 C.F.R. § 503 and Conn.Bd. of Educ.Reg.

---

1. 34 C.F.R. § 300.503(c) *Parent initiated evaluations* provides "If the parent obtains an independent evaluation at private expense, the results of the evaluation: (1) Must be considered by the public agency in any decision made with respect to the provision of a free appropriate public education to the child."

Conn.Bd. of Educ.Reg. § 10–76d–9(c)(3) *Independent evaluation*, as amended, mirrors the federal regulation and provides "If the parents obtain an independent evaluation at private expense, the results of the evaluation must be considered by the board of education in any decision concerning the provision of a free appropriate public education to the child and may

be presented as evidence at a due process hearing conducted pursuant to Section 10–76h–1 of these regulations."

Although both the federal and state regulations contain no explicit provision requiring the school board to consider an independent evaluation performed at *public* expense, the board, consistent with the spirit of IDEA, must nevertheless consider such an evaluation when determining the appropriateness of a child's current placement. To hold otherwise would be anomalous, since the relevance of an independent evaluation is completely unrelated to which party bears its cost.

§ 10–76d–9, or whether as defendant contends, due process was satisfied when the school psychologist reviewed the independent evaluation and then read and summarized portions of the evaluation to the PPT.

Although "consider" is undefined by the federal and state regulations implementing IDEA, the regulations themselves suggest that due process was satisfied in the case bar. Notably, there is no provision in the regulations requiring that a school board accept the recommendations of an independent evaluation or that the evaluation be accorded any particular weight.[2]

Moreover, the federal regulations explicitly define procedures due parents when an independent evaluation has been undertaken. First, 34 C.F.R. § 300.533 requires that persons knowledgeable about evaluation data be present at the PPT. Secondly, 34 C.F.R. § 300.344 provides that a parent may, at its discretion, invite other individuals such as an independent psychologist to the PPT.

 In the case at bar, both plaintiff and defendant have cross-moved for summary judgment. Nevertheless, when drawing all reasonable inferences in favor of the plaintiff, the court finds that no genuine issue of material fact exists as to whether or not the PPT considered the independent evaluation. It is undisputed that Dr. Mendelson reviewed Dr. Sink's report prior to the PPT and that Dr. Satir, a psychologist and PPT member familiar with evaluation data, read and summarized portions of the evaluation to the PPT. More importantly, there is no allegation by the plaintiff that the parents were denied the opportunity to comment upon the report and its placement recommendations, nor were they denied their right to invite Dr. Sink to accompany them to the PPT.

The 1st Circuit has noted that 34 C.F.R. § 503 requires "only that an independent educational evaluation 'must be considered' in the decision made by a public agency, not that there be substantive discussion of that opinion." *G.D. v. Westmoreland School District,* 930 F.2d 942, 947 (1st Cir. 1991). In *Westmoreland,* the court concluded that the placement team had met the regulatory standard simply by reviewing the report at a meeting. *Id.* at 947.

Based on the purposes behind IDEA, the federal and state regulations implementing IDEA, and federal decisional law, due process was satisfied in this case as a matter of law because the PPT "considered" the independent evaluation within the meaning of 34 C.F.R. § 503 and Conn.Bd. of Educ. Reg. § 10–76d–9 when Dr. Satir read portions of Dr. Sink's report and summarized it at the PPT meeting. IDEA and its implementing regulations nowhere mandate that a school board accept the recommendations of an independent evaluation, accord the evaluation any particular weight, or that each and every member of a PPT be presented with an read the evaluation itself. Accordingly, summary judgment should enter in favor of the defendant.

### IV.

The plaintiff further argues that the PPT was "censored" and "orchestrated" by the defendant, thereby violating its right to due process. Although the defendant contends that these claims were not raised in plaintiff's complaint and are inappropriate on a motion for summary judgment, the court finds that ¶¶ 16 and 17 of the Plaintiff's complaint support such allegations. Therefore, the court will address these claims.

When drawing every reasonable inference in favor of the plaintiff, the court should dismiss this action. The plaintiff's claim that the PPT was "orchestrated" essentially rests upon its charge that "the director of special education ... predetermined the decision by 'digesting' the reports." (Plaintiff's Memorandum in Support of Partial Summary Judgment at 3). Although the plaintiff contends that Dr. Satir criticized and trivialized Dr. Sink's

---

**2.** The comments following Conn.Bd. of Educ. Reg. § 10–766–9 provide that "[t]he results of independent evaluations *need not be considered conclusive* by the PPT, but rather as additional information to be considered along with all other information (emphasis added)." The regulations themselves note that commentary does not have the force of law.

report, the fact that only Doctors Mendelson and Satir actually read the report does not in and of itself defeat defendant's motion for summary judgment.

Turning to the claim of censorship, there is similarly no genuine issue of material fact regarding the propriety of the PPT. Even assuming that "Dr. Mendelson informed Mr. Barlia that questions with regard to an earlier identification were not relevant to the current proceedings," the plaintiff's assertion that "this is an astounding violation of the PPT process" (Plaintiff's Local Rule 9 Statement of Undisputed Facts at 5) must fail. The fact remains that the *parent* was not denied the opportunity to be an equal collaborator at the PPT. And while IDEA mandates that all children with learning disabilities receive a FAPE, it does not mandate any particular result be reached, nor does it script the discussion which must take place when reviewing a child's PPT. Therefore, this action should be dismissed, and judgment entered for the defendant.

### V.

In what appears to have been a tactical decision, the plaintiff chose not to bring before the Administrative Hearing Officer its claim that S.S. was denied a FAPE. Plaintiff's failure to pursue this claim at the administrative level bars adjudication of this claim on appeal because plaintiff failed to first exhaust its administrative remedies as required by IDEA. *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987); 20 U.S.C. § 1415(e)(2). In addition, nothing in the record indicates that exhaustion would be futile, that the state agency has adopted a policy to pursue a practice of general applicability contrary to law, or that it is improbable that adequate relief can be obtained by pursuing administrative remedies. *Tirozzi* at 756. Therefore, this portion of plaintiff's complaint is dismissed, without prejudice.

Either party is free to object to this decision pursuant to 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges. Failure to object in a timely fashion may preclude further review. *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989).