**T.S., Parent and Guardian of S.S., a Handicapped Minor, Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION OF the TOWN OF RIDGEFIELD, Defendant–Appellee,**

**State of Connecticut Department of Education, Defendant.**

**No. 1679, Docket 93–7126.**

United States Court of Appeals, Second Circuit.

Argued June 16, 1993.

Decided Nov. 24, 1993.

Mark J. Sommaruga, Hartford, Conn. (Lawrence J. Campane, Sullivan, Lettick & Schoen, Hartford, CT, of counsel), for defendant-appellee.

William M. Laviano, Ridgefield, CT, for plaintiff-appellant.

Before: CARDAMONE and MAHONEY, Circuit Judges, and PARKER,* District Judge.

## PER CURIAM:

Plaintiff-appellant T.S., the parent and guardian of S.S., a handicapped minor, appeals from a judgment entered January 29, 1993 in the United States District Court for the District of Connecticut, T.F. Gilroy Daly, *Judge*, that approved, affirmed, and adopted an opinion of Magistrate Judge Thomas P. Smith entered October 20, 1992. The magistrate judge recommended that T.S.'s motion for summary judgment be denied and that the motion for summary judgment of defendant-appellee Board of Education of the Town of Ridgefield (the "Board") be granted.

See *T.S. v. Ridgefield Bd. of Educ.*, 808 F.Supp. 926 (D.Conn.1992).

T.S. contends on appeal that: (1) the Board violated applicable federal and state regulations [1] which require that an independent educational evaluation ("IEE") be "considered" by her son's Planning and Placement Team ("PPT") in formulating his Individualized Education Program ("IEP"); and (2) Board representatives improperly "orchestrated" and "censored" the PPT meeting that established S.S.'s IEP.

S.S. has a language-based learning disability. T.S. initiated this action in federal court pursuant to 20 U.S.C. § 1415(e) (1988), a provision of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 (1988 & Supp. III 1991) *et seq.*, to seek review of an administrative decision upholding the action of a Ridgefield school system PPT. T.S. requests relief from the PPT's decision to discontinue provision for S.S.'s education at a private facility, Rumsey Hall, and to authorize instead his attendance at Ridgefield High School.

The PPT reached its decision at a meeting held May 24, 1991 that was attended by six employees of the Ridgefield school system, as well as by T.S. and the secretary to T.S.'s attorney. Its decision rejected the recommendation of an IEE, funded by the Board at the request of T.S., that S.S. remain at Rumsey Hall because its small overall size, low student-teacher ratio, and individual tutorials offered him the best chance of progress. Only two of the PPT members (other than T.S.) were provided with copies of, and read, the IEE prior to the meeting. One of those members "read the social-emotional findings and summarized other portions of

---

* The Honorable Fred I. Parker, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

1. The regulations in question provide:

    (c) *Parent initiated evaluations.* If the parent obtains an independent educational evaluation at private expense, the results of the evaluation—

       (1) *Must be considered* by the public agency in any decision made with respect to the provision of FAPE [a "free appropriate public education"] to the child; and

       (2) May be presented as evidence at a hearing under this subpart regarding that child.

34 C.F.R. § 300.503(c)(1) (1993) (emphasis added).

    (3) If the parents obtain an independent evaluation at private expense, the results of the evaluation *must be considered* by the board of education in any decision concerning the provision of a free appropriate public education to the child and may be presented as evidence at a due process hearing conducted pursuant to Section 10–76h–1 of these regulations.

Conn.Bd. of Educ.Reg. § 10–76d–9(c)(3) (1991) (emphasis added).

[the IEE] to the PPT." *T.S.,* 808 F.Supp. at 928.

On appeal, T.S. contends that because only two of the PPT members were provided with the IEE prior to the meeting, and because the evaluation was not discussed at any length, it was not "considered" by the PPT within the meaning of the applicable federal and state regulations. *See supra* note 1. T.S. argues that all members of a PPT must be provided with a copy of an IEE in order for the PPT to have "considered" it. T.S. also contends that IDEA procedural safeguards were violated because the PPT meeting was "orchestrated" and "censored" by PPT members employed by the Board who limited the topics of discussion. Specifically, in addition to her concerns about the consideration of the IEE, which she deems the improper "orchestration," T.S. complains that a question by a PPT member concerning S.S.'s past educational history was ruled "irrelevant" by the person conducting the meeting, and accordingly was not answered, constituting "censorship" of the discussion.

It is the purpose of the IDEA to provide a free appropriate public education to all children with disabilities. 28 U.S.C. § 1400(c) (1988 & Supp. II 1990). Any local educational agency that receives assistance under the IDEA must provide written prior notice to the parents or guardian of a child with disabilities regarding any proposed change in the educational placement of the child. *Id.* § 1415(b)(1)(C) (1988). The parents or guardian may then present a complaint regarding the proposed change, *id.* § 1415(b)(1)(E) (1988), and are also entitled to "an impartial due process hearing" by the local educational agency that may not be "conducted by an employee of such agency ... involved in the education or care of the child." *Id.* § 1415(b)(2) (1988). The hearing in this case was conducted pursuant to these statutory provisions.

The implementing federal regulations establish "due process procedures" for the effectuation of the statutory scheme. *See generally* 34 C.F.R. §§ 300.500–300.589 (1993). Section 300.503 establishes the procedures for consideration of IEEs at statutory hearings. The primary issue presented by this

appeal is whether the IEE prepared for S.S. was properly "considered" at the PPT hearing to formulate his IEP within the meaning of the applicable federal and state regulations. *See supra* note 1.

We note preliminarily that these regulations require that a local educational agency must consider only IEEs obtained at private expense, not those that, like S.S.'s, are publicly funded. *See supra* note 1. The magistrate judge concluded, however, that "consistent with the spirit of the IDEA," the PPT was nevertheless required to consider the IEE in determining S.S.'s placement. *T.S.,* 808 F.Supp. at 930 n. 1. Because the Board does not challenge this conclusion on appeal, we accept it for purposes of this appeal without intending to provide a precedential ruling on the issue.

No definition of the term "considered" is offered in either the federal or state regulations. Nor do they require that the PPT assign a specific weight to any item of information presented to it for its consideration. Commentary following the Connecticut regulation states that " '[t]he results of independent evaluations need not be considered conclusive by the PPT, but rather as additional information to be considered along with all other information.' " *T.S.,* 808 F.Supp. at 931 n. 2 (quoting commentary).

Plain meaning is ordinarily our guide to the meaning of a statutory or regulatory term. *See Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *Westnau Land Corp. v. U.S. Small Business Admin.,* 1 F.3d 112, 115 (2d Cir.1993); *In re Kerwin (First Brandon Nat'l Bank v. Kerwin),* 996 F.2d 552, 556 (2d Cir.1993). The plain meaning of the word "consider" is "to reflect on: think about with a degree of care or caution." Webster's Third New International Dictionary 483 (1986). Nothing in this definition suggests that every member of a body must read a document in order for the body collectively to "consider" it. In addition, T.S.'s interpretation of the term "considered" would assign greater weight to an IEE than to other information presented to a PPT, and accordingly conflicts with the commentary to

the state regulation. *See T.S.*, 808 F.Supp. at 931 n. 2 (quoting commentary).

Other circuits have given a limited reading to the term "considered" in this context. The First Circuit stated in *G.D. v. Westmoreland School District*, 930 F.2d 942, 947 (1st Cir.1991), that the regulatory requirement for an IEE to be "considered" by a public agency does not mandate "that there be substantive discussion" of the IEE. And the Eighth Circuit indicated in *Evans v. District No. 17*, 841 F.2d 824, 830 (8th Cir.1988), that an IEE had been adequately "considered" when it was read by the public school's director of special education.

■ In this case, it is undisputed that Michael Mendelson, Ridgefield's director of special education and a member of the PPT, received and reviewed the IEE prior to the PPT meeting. It is also undisputed that Kenneth Satir, Ridgefield's systemwide psychologist, read the social-emotional findings of the IEE to the PPT and summarized other portions of the report for the group. Minutes of the PPT meeting also indicate that T.S. discussed the reasons she believed that S.S. should remain at Rumsey Hall, which were very similar to those set forth in the IEE. While we cannot say that in failing to ensure the distribution of this publicly financed report to all members of the PPT prior to the meeting, the Board made wise use of the necessarily limited funds of the school system, we nevertheless conclude that the consideration given to the IEE was sufficient to satisfy T.S.'s due process rights under the IDEA.

■ T.S. also argues that her procedural rights under the IDEA were violated because the PPT was "orchestrated" to reach a predetermined result and Board employees on the PPT "censored" the discussion. To support this claim, T.S. points to Satir's summary of the IEE for the group and Mendelson's refusal to answer a question posed by another PPT member regarding S.S.'s educational history. Even though Mendelson and Satir are both Board employees, the record does not support T.S.'s inference that they collaborated to "orchestrate" or "censor" the meeting in derogation of her due process rights. As Magistrate Judge Smith

noted, "[t]he fact remains that the *parent* was not denied the opportunity to be an equal collaborator at the PPT." *T.S.*, 808 F.Supp. at 932. T.S. had the right to participate in the PPT hearing, *see* 34 C.F.R. § 300.345(a) (1993), which she exercised, and had a copy of the IEE which allowed her to monitor Satir's summary of the evaluation. Furthermore, she could have invited Frances Sink, who prepared the IEE, to the PPT meeting where the report was discussed. *See* 34 C.F.R. 300.344(a)(5) (1993).

In view of the foregoing, we affirm the judgment of the district court.