**BROOK MAYS MUSIC CO.,**
Plaintiff–Appellant,

v.

**NATIONAL CASH REGISTER COMPANY, Defendant–Appellee.**

No. 87–1277.

United States Court of Appeals, Fifth Circuit.

March 8, 1988.

---

Peter S. Vogel, Dallas, Tex., for plaintiff-appellant.

Charles A. Gall, Will S. Montgomery, Jenkens & Gilchrist, P.C., Dallas, Tex., for defendant-appellee.

Before THORNBERRY, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this case Brook Mays Music Company ("Brook Mays"), which signed a contract binding it to arbitrate every dispute it had with National Cash Register Company ("NCR"), attempts to escape from arbitration by arguing that a subsequent purchase order it executed, which also bound it to arbitrate its dispute with NCR, somehow released Brook Mays from its original contract and also negated the arbitration terms provided in the purchase order. The only thing that saves this case from the frivolous category is a decision in the Seventh Circuit, *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866 (7th Cir.1985), which upheld a jury verdict that determined under similar circumstances, that arbitration was not required. We find *Matterhorn* distinguishable and affirm the district court's stay of these proceedings pending arbitration.

I

In March 1977, Brook Mays, which sells and rents musical instruments and related materials, requested that National Cash Register evaluate Brook Mays for possible computerization of its business. As a result of NCR's evaluation, the parties reached an agreement in April under which NCR would sell computer systems and software to Brook Mays. The contract, entitled "Universal Agreement," provided on the front page that:

*NCR Corporation (NCR) and Customer agree that all equipment,* programs, and systems and maintenance services obtained from NCR, either directly or indirectly, *shall be furnished only under the terms and conditions of this agreement....*

*The terms and conditions of this agreement shall prevail in spite of any contrary printed provision of any purchase order* or other form utilized by

Customer in effecting the furnishing of any equipment, programs or services *and any such form, letter or order must state on the face of it:*

FURNISHING OF THE EQUIP-MENT, PROGRAMS AND/OR SER-VICES IS DONE ONLY IN AC-CORDANCE WITH AND PURSU-ANT TO OUR AGREEMENT DATED 4-22-77.

. . . .

*This Agreement may not be changed or modified in any way subsequent to the date of execution except by an instrument in writing signed by the Customer and accepted by NCR. No contract or amendment entered into after this Agreement shall amend by implication any provision of this Agreement....* This Agreement shall remain in effect until terminated by either party on 30 days prior written notice.

. . . .

Disputes—*Any controversy or claim,* including any claim of misrepresentation, *arising out of or related to this Agreement and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR to Customer, shall be settled by arbitration.* (Emphasis added.)

Pursuant to this agreement, NCR sold to Brook Mays a computer system and related items. The computer system proved to be unsuccessful, however, and NCR attempted to remedy the problems by providing another system. NCR agreed that its second system would be operating to Brook Mays' satisfaction by August 1, 1982, and sent to Brook Mays for its signature a purchase order form containing, among other provisions, two blank boxes. The text beside the boxes read:

1. Terms and conditions on reverse side apply.[1]

2. Furnishing of equipment, programs and/or services is done only in accord-

ance with and pursuant to our agreement dated: U/A date: ____.

Brook Mays signed and returned the purchase order form to NCR, but it did not check either box. Upon receipt of the order, NCR checked box 2.

The second computer system failed to satisfy Brook Mays by August 1, 1982, as agreed, and Brook Mays brought suit in federal district court in June 1984, seeking damages for fraud and misrepresentation, breach of contract, violation of the Texas Deceptive Trade Practices–Consumer Protection Act, violation of the Lanham Act, computer professional malpractice, and negligence. In September 1984, NCR filed its motion to stay the action pending arbitration and the district court granted NCR's motion. The district court concluded that the Universal Agreement applied to NCR's sale of the second computer system to Brook Mays.

## II

In its appeal, Brook Mays argues that whether the Universal Agreement's arbitration clause applies to the present dispute is a question of fact requiring a trial. Specifically, Brook Mays argues that the Universal Agreement only covered the first computer system and that the purchase order concerning the second system was a modification of the original Universal Agreement. Brook Mays contends that by its completing the purchase order form without checking either box, neither the terms on the back of the purchase order nor the Universal Agreement applied; and, consequently, Brook Mays argues, the relations between the parties are governed by the Uniform Commercial Code, which does not require arbitration.

To the contrary, NCR maintains that the Universal Agreement was a binding contract that was meant to cover all future dealings between the two companies. Specifically, NCR notes that the Universal Agreement referred to future purchase orders such as the one in question here.

---

**1.** It is undisputed that the terms and conditions on the reverse side of the purchase order re-

quired that arbitration be employed in the event of a dispute between the contracting parties.

NCR further maintains that it did not offer to modify the Universal Agreement by the inclusion of two alternatives on the purchase order, but it simply failed to check the box stating that the Universal Agreement applied. Furthermore, NCR asserts that under either alternative Brook Mays could have checked on the purchase order, arbitration would have been required. Finally, NCR notes that the Universal Agreement requires modification through a writing signed by both parties, specifically agreeing to such modification, and points out that the purchase order, with neither box checked, does not satisfy this requirement. Thus, NCR argues that the Universal Agreement was an unambiguous binding contract requiring arbitration, which clearly referred to future business dealings, such as the sale of the second computer system.

### III

In addressing Brook Mays' contentions, we first note that there are no disputed facts at issue. We are simply faced with a matter of contract interpretation and the question is whether the Universal Agreement was subsequently modified by the purchase order and, if so, to what effect.

■ In view of the fact that specific language in the Universal Agreement provides that the terms of the agreement shall control despite any contrary language printed in NCR's purchase orders, it is clear that Brook Mays' contention is meritless. Here, both parties agreed to the Universal Agreement, which plainly states that all equipment and services sold and performed by NCR are to be covered "under the terms and conditions of this agreement." This language clearly indicates that this agreement was meant to control the sale of the second computer system. Although the Universal Agreement allows modification or change of the contract by an "instrument in writing signed by the customer and accepted by NCR," the undisputed facts here show that after Brook Mays returned the purchase order to NCR without checking either box, NCR checked the Universal Agreement box and signed the purchase order. Thus, under the terms of the Universal Agreement, NCR did not accept any modification of its original agreement. Moreover, we note that even if the purchase order is construed as an offer of modification by NCR, the purchase order makes clear that NCR's sole offer was to allow Brook Mays to check either box; and under either alternative, Brook Mays would be contractually obligated to arbitrate any dispute. Thus, there are no terms in the purchase order that would modify the arbitration clause found in the Universal Agreement even if the purchase order were a modification. In any event, we hold that the Universal Agreement indisputably controls disputes arising from the sale and purchase of the second computer system under the facts of this case, and that the provisions for arbitration are binding on Brook Mays.

■ Brook Mays insists however that it was entitled to a jury trial on this issue and relies upon the *Matterhorn* case. Although we have serious doubts that a jury trial was warranted in *Matterhorn,* doubts also harbored by the writing judge in that case, *see Matterhorn,* 763 F.2d at 873, the case is nevertheless distinguishable. Evidence was introduced in *Matterhorn* showing that NCR had represented to Matterhorn that the Universal Agreement did not apply to their later transactions. *Id.* at 874. Brook Mays does not contend that there is similar disputed evidence here. There are no disputed facts in this case that even arguably create a jury issue, and that is the difference between *Brook Mays* and *Matterhorn.* *Matterhorn,* therefore, is not instructive in this case.

In sum, we have reviewed the two written documents before us and find that the arbitration clause in the Universal Agreement unambiguously applied to the sale of the second computer system. Since the parties made no modification to the Universal Agreement, Brook Mays is obligated to resolve its business disputes with NCR through arbitration. We therefore affirm the district court's stay of this action pending arbitration.

AFFIRMED.