United States Court of Appeals,
for the Fifth Circuit.

No. 93-2762.

In the Matter of TEXAS GENERAL PETROLEUM CORP., Debtor.

Van E. McFARLAND, et al., Appellants,

v.

Steven A. LEYH, Trustee of the Liquidating Trust of Texas General
Petroleum Corp., Appellee.

Dec. 29, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellants Van E. McFarland and McFarland & Tondre (McFarland)
appeal the district court's judgment in favor of Appellee Steven A.
Leyh, Trustee of the Liquidating Trust of Texas General Petroleum
Corp. (Liquidating Trustee). Debtor Texas General Petroleum Corp.
brought this fraudulent conveyance action against McFarland after
the bankruptcy court had confirmed Debtor's Chapter 11 plan of
reorganization. The Liquidating Trustee ultimately asserted the
action in place of Debtor. By stipulation, the only issue at trial
was whether the Liquidating Trustee had standing to assert the
fraudulent conveyance action. The bankruptcy court answered that
question in the affirmative, and the district court affirmed. We
affirm but for somewhat different reasons.

BACKGROUND

The bankruptcy court confirmed debtor's plan of reorganization
under Chapter 11 of the Bankruptcy Code in April 1985. In October

of that year, the Liquidating Trustee initiated this fraudulent conveyance action against McFarland. The subject of the suit was a $12,210.25 payment made by Debtor to McFarland for legal services performed for a former officer of Debtor's parent company. The parties stipulated that the only issue was the Liquidating Trustee's standing to assert the action. The Plan gave the Liquidating Trustee authority to assert a list of avoidance actions on behalf of the unsecured creditors. The list, however, did not include the fraudulent conveyance action against McFarland. The bankruptcy court determined that the Plan was ambiguous. Using parol evidence, the court concluded that the parties intended the Liquidating Trustee to have the authority to assert on behalf of the unsecured creditors any causes of action not specifically addressed by the Plan 122 B.R. 306.

The district court affirmed, concluding that the trial court's interpretation of the ambiguous plan was not clearly erroneous. In addition, the district court determined that the bankruptcy court had jurisdiction to adjudicate the dispute, that McFarland was not entitled to a jury trial, and that the bankruptcy court's award of prejudgment interest was not error. During the litigation, co-defendant Brice Tondre settled with the Liquidating Trustee for $10,000. The district court credited only $500 of the settlement payment to the judgment.

## DISCUSSION

On appeal, McFarland claims that the Liquidating Trustee lacks standing. In addition, McFarland asserts five other issues:

2

(1) the bankruptcy court lacked jurisdiction; (2) limitations extinguished the avoidance action; (3) McFarland was entitled to a jury trial; (4) the award of prejudgment interest was error; and (5) McFarland should have received full credit for the settlement of his co-defendant. We review findings of fact for clear error and legal conclusions de novo. *Young v. National Union Fire Ins. Co., (In re Young),* 995 F.2d 547, 548 (5th Cir.1993). When the district court has affirmed the bankruptcy court's findings of fact, our review for clear error is strict. *Id.*

*I. Standing*

McFarland first contends that the Liquidating Trustee cannot exercise avoidance powers because it is neither the Debtor nor the Trustee. In this case, the Debtor acted as debtor-in-possession, and the bankruptcy court employed no Trustee. The Plan created the position of Liquidating Trustee.

McFarland's argument runs counter to Section 1123 of the code, which allows a plan to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, [of any claim or interest belonging to the debtor or to the estate]." 11 U.S.C. § 1123(b)(3)(B) (1988). Section 1123(b)(3)(B) allows a plan to transfer avoidance powers to a party other than the debtor or the trustee. *Briggs v. Kent (In re Professional Inv. Properties of America),* 955 F.2d 623, 626 (9th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992); *Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir.1989).

3

We agree with the Ninth and Tenth Circuits that a party other than the debtor or the trustee may be authorized by a plan of reorganization to exercise avoidance powers.

Under Section 1123(b)(3)(B), a party other than the debtor or the trustee that seeks to enforce a claim must show (1) that it has been appointed, and (2) that it is a representative of the estate. *Retail Marketing Co. v. King (In re Mako, Inc.),* 985 F.2d 1052, 1054 (10th Cir.1993); *In re Hunt,* 136 B.R. 437, 444 (Bankr.N.D.Tex.1991). The bankruptcy court's approval of a plan that clearly appoints a stranger to the estate satisfies the first element. *Mako,* 985 F.2d at 1055; *Sweetwater,* 884 F.2d at 1326; *Nordberg v. Sanchez (In re Chase & Sanborn Corp.),* 813 F.2d 1177, 1180 n. 1 (11th Cir.1987). As for the second element, courts apply a case-by-case analysis to determine whether the appointed party's responsibilities qualify it as a representative of the estate. *Sweetwater,* 884 F.2d at 1326-27. "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Id.* at 1327. The reason for the emphasis on unsecured creditors is that the proceeds recovered in an avoidance action satisfy the claims of priority and general unsecured creditors before the debtor benefits. *Id.*

Applying this test the Plan clearly appoints the Liquidating Trustee as a representative of the estate to pursue avoidance actions on behalf of unsecured creditors. Class 5 of the Plan consists of unsecured claimants. The Liquidating Trust is provided

4

for the benefit of Class 5 creditors. Provision 5.5.3 of the Plan establishes the assets of the Liquidating Trust as including "bankruptcy-created or sanctioned causes of action of the debtor-in-possession described or listed in Exhibit B." Exhibit B lists specific avoidance actions. The approved Plan clearly gives the Liquidating Trustee the power to assert avoidance actions. Furthermore, the Liquidating Trustee qualifies as a representative of the estate because the proceeds obtained from its actions benefit the unsecured creditors. We conclude that the Plan gives the Liquidating Trustee authority to enforce avoidance actions on behalf of the estate.

The avoidance action that the Liquidating Trustee asserts against McFarland, however, is not found in Exhibit B. McFarland, citing § 1141(b), contends that, because the Plan through Exhibit B does not specifically provide for the fraudulent conveyance action, the ability to exercise that action vests in the debtor.[1] McFarland would apply the § 1141(b) presumption rather than use parol evidence. Avoidance actions, however, are not property of the estate. *Harstad v. First Am. Bank,* 39 F.3d 898, 902-03, (8th Cir.1994). Section 1141(b) may determine what assets remain property of the estate, but that section has nothing to do with the retention of avoidance actions.[2] *In re Harstad,* 155 B.R. 500, 510

---

[1]Section 1141(b) provides: "Except as otherwise as provided in the Plan or the order confirming the Plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b) (1988).

[2]If § 1141(b) applied to avoidance actions, § 1123(b)(3)(B), which expressly applies to debtors, would become a nullity.

5

(Bankr.D.Minn.1993) (subsequent history omitted).

We apply the rules of contract interpretation to the interpretation of a plan of reorganization. *See Official Creditors Comm. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.),* 635 F.2d 365, 368 (5th Cir.1981). The determination of whether a contract is clear or ambiguous is a question of law. *Id.* If we determine the contract to be ambiguous, the determination of the parties' intent from parol evidence is a question of fact.[3] *Id.*

Provision 7.1 of the Plan states: "The reorganized debtor shall retain that property described on Exhibit "F". Among the property of the estate hereby distributed to the trust are those claims and causes of action listed or described on Exhibit "B" (including causes of action created or sanctioned by §§ 542-553)." The parenthetical portion of the provision could describe those avoidance actions listed in Exhibit B. Alternatively, the parenthetical could describe the phrase "[a]mong the property of the estate hereby distributed to the trust." Provision 5.5.3 suggests that Exhibit B contains a complete list of the trust's

---

*Harstad,* 39 F.3d at 902-03 (asking why a debtor would retain a power by using specific language if § 1141(b) gives him that power automatically).

[3]*Mako* requires the evidence of an appointment of a stranger to be clear. 985 F.2d at 1055. The reason for clarity is to protect the unsecured creditors. *Id.* at 1056. Unsecured creditors want to know whether post confirmation avoidance actions will be initiated and by whom. The clear appointment requirement satisfies their concerns. Neither *Mako* nor the cases it cites, however, require clear evidence of the particular action sought to be enforced. *Stratford* supplies the additional analysis when, as in this case, the appointment is clear but the Plan is unclear with regard to the particular action sought to be enforced.

assets.  On the other hand, the use of the word "among" in Provision 7.1 suggests that Exhibit B is not exclusive.  We agree with the bankruptcy and district courts that the Plan is ambiguous.

To resolve the ambiguity, the bankruptcy court employed parol evidence to determine the intent of the parties.  The court found that those avoidance actions not specifically addressed by the Plan belong to the Liquidating Trust.  We see no clear error.  Furthermore, the result reached by the court comports with the general policy behind the assertion of avoidance actions.  The proceeds recovered in avoidance actions should not benefit the reorganized debtor;  rather, the proceeds should benefit the unsecured creditors.  5 Collier on Bankruptcy ¶ 1123.02, at 1123-23 (Lawrence P. King ed., 15th ed. 1994).  The Liquidating Trust acts on behalf of the Class 5 unsecured creditors.  The proceeds from this fraudulent conveyance action will benefit the Class 5 unsecured creditors.  We conclude that the Liquidating Trustee has standing to assert a fraudulent conveyance action against McFarland.

*II. Jurisdiction*

McFarland contends that the bankruptcy court lacked subject matter jurisdiction under Article III of the Constitution to adjudicate this dispute.  The district court glossed over this argument by asserting that the bankruptcy court had jurisdiction by virtue of the Plan and 28 U.S.C. § 157(b)(1).[4]  McFarland's

---

[4]Section 157(b)(1) gives the bankruptcy courts jurisdiction over core proceedings.  A fraudulent conveyance action is an example of a core proceeding.  28 U.S.C. § 157(b)(2)(H) (1988).

7

argument, however, is based on Article III as interpreted by *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (plurality opinion). We must undertake the constitutional analysis.

*Marathon* struck down the jurisdictional provision of the 1978 Bankruptcy Act. The debtor had brought a state law breach of contract action against a creditor. The Court determined that the suit did not implicate public rights and, thus, must be adjudicated by an Article III judge. The court distinguished "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," from "the adjudication of state-created private rights." *Id.* at 71, 102 S.Ct. at 2871. To delineate public rights, the court announced two principles: (1) "when Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated"; and (2) the Article III court must retain the essential attributes of judicial power. *Id.* at 80-81, 102 S.Ct. at 2876.

In its 1984 Amendments to the Bankruptcy Code, Congress followed the court's rationale. Bankruptcy courts retained jurisdiction over core proceedings. 28 U.S.C. § 157(b)(1). Congress did not define "core proceeding," but it did provide a nonexclusive list of core proceedings. *See id.* § 157(b)(2). The list includes fraudulent conveyance actions. *Id.* § 157(b)(2)(H).

The Ninth Circuit has held a bankruptcy court's exercise of jurisdiction under § 157(b)(2)(H) constitutional. *Duck v. Munn (In*

8

*re Mankin), 823 F.2d 1296, 1309 (9th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988); *see also Hunt,* 136 B.R. at 442 (following *Mankin). Mankin* concerned a state law fraudulent conveyance action brought by the trustee in bankruptcy under § 544(b) of the Code.  The Ninth Circuit applied *Marathon's* two principles and determined that public rights were at issue.  On the first principle, the court reasoned that Congress deserved some discretion.  Even though state law provided the rule of decision, Congress gave avoidance powers to the trustee "for the purpose of restructuring debtor-creditor relations pursuant to the federal bankruptcy power."  *Id.*  Unlike the state law action in *Marathon,* Congress considered a fraudulent conveyance action to be a core proceeding.  Concerning the second principle, the court explained the difference in the appointment of bankruptcy judges under the 1978 Bankruptcy Act and after the 1984 Amendments.  Under the 1978 Act, the President was supposed to appoint bankruptcy judges with the advice and consent of the Senate.[5]  Now, Article III judges

---

[5]The President actually never appointed any bankruptcy judges because the portion of the 1978 Act which gave the President that power only became effective on April 1, 1984.  *See* 1978 Bankruptcy Act, Pub.L. No. 95-598, §§ 201(a), 402(b), 92 Stat. 2549, 2657, 2682 (1978).  By that time, the Supreme Court had decided *Marathon,* and Congress had revised the manner of appointment for bankruptcy judges.  *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 104(a), 98 Stat. 333, 336 (1984), *codified at* 28 U.S.C. § 152(a)(1) (1988).

Nevertheless, the plurality opinion in *Marathon* based its decision on the manner of appointment provided in the 1978 Act.  *See Marathon,* 458 U.S. at 89-90, 102 S.Ct. at 2880-81 (Rehnquist, J., concurring); *see also id.* at 53, 102 S.Ct. at 2862 (plurality opinion) (discussing the differences between appointment before and after the 1978 Act).  Thus, to distinguish *Marathon,* the Ninth Circuit in

9

appoint them.  The appointment power gives Article III judges more control over their bankruptcy counterparts.  *See id.*

We agree with the Ninth Circuit's conclusion in *Mankin.*[6]  As we have previously noted, Congress took great pains to incorporate in its 1984 Amendments the varying opinions expressed in *Marathon. Wood v. Wood,* 825 F.2d 90, 95-96 (5th Cir.1987).  Moreover, "practical attention to substance rather than doctrinaire reliance on formal categories should inform application of Article III." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 587, 105 S.Ct. 3325, 3336, 87 L.Ed.2d 409 (1985).  Jurisdiction over the restructuring of debtor-creditor relations requires jurisdiction over property of the estate.  Although McFarland and the Liquidating Trustee are two private individuals, the Liquidating Trustee is acting on behalf of the unsecured creditors.  For practical purposes, the fraudulent conveyance action instituted on behalf of the estate is as integral to the bankruptcy restructuring process as any other core proceeding.  We conclude that the bankruptcy court's exercise of jurisdiction in the fraudulent conveyance action was constitutional.[7]

---

*Mankin* emphasized the difference in appointment as contemplated by the 1978 Act and as practiced under the 1984 Amendments.

[6]The case for jurisdiction here is even stronger than that presented in *Mankin.*  In this case, the fraudulent conveyance action is based on federal law, not state law.  Because federal law provides the rule of decision, the substantial discretion due Congress under *Marathon's* first principle definitely applies.

[7]McFarland also cites the Supreme Court discussion in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 55-56, 109 S.Ct. 2782, 2797-98, 106 L.Ed.2d 26 (1989).  The trustee in bankruptcy

10

*III. Statute of Limitations*

McFarland contends that the Liquidating Trustee's fraudulent conveyance action is barred by limitations. He points to § 546(a) of the Code, which specifies the limitations period for avoidance actions.[8] McFarland did not raise this defense in either the bankruptcy court or the district court. To circumvent the obstacle of waiver,[9] McFarland contends that § 546(a) is a non-waivable jurisdictional provision. Because the issue of subject matter jurisdiction may be raised at any time, we can reach the merits of McFarland's limitations defense if we determine that § 546(a) is a jurisdictional provision.

*Martin v. First Nat'l Bank (In re Butcher),* 829 F.2d 596, 600 (6th Cir.1987), *cert. denied,* 484 U.S. 1078, 108 S.Ct. 1058, 98

---

in *Granfinanciera* had brought a fraudulent conveyance action against a creditor. The question presented for the Court was whether the creditor had a right to jury trial. McFarland points to part of Justice Brennan's opinion that appears to treat the fraudulent conveyance action as matter of private rather than public right. *Id.* at 56, 109 S.Ct. at 2798. The Supreme Court's discussion of public rights, however, is dictum by its own admission.

The Eleventh Circuit has recognized that the Supreme Court's dictum in *Granfinanciera* leaves the constitutional exercise of bankruptcy jurisdiction "open to serious question." *Gower v. Farmers Home Admin. (In re Davis),* 899 F.2d 1136, 1140 n. 9 (11th Cir.1990).

[8]Section 546(a) reads: "An action ... may not be commenced after the earlier of—(1) two years after the appointment of a trustee ... or (2) the time the case is closed or dismissed." 11 U.S.C. § 546(a) (1988).

[9]The parties stipulated before trial that standing was the only issue before the bankruptcy court. A stipulation of issues at trial binds the parties on appeal. *Wilson v. Bailey,* 934 F.2d 301, 305 (11th Cir.1991).

11

L.Ed.2d 1020 (1988), states that § 546(a) is a jurisdictional provision.  If an avoidance action is not brought in accordance with § 546(a), the bankruptcy court has no jurisdiction to hear the action.  *Id.*  A few other courts recognize this view.  *In re Railway Reorganization Estate, Inc.,* 133 B.R. 578, 581 (Bankr.D.Del.1991);  *In re Frascatore,* 98 B.R. 710, 719 (Bankr.E.D.Pa.1989) (dictum);  *In re Oro Import Co.,* 52 B.R. 357, 359 (Bankr.S.D.Fla.1985), *rev'd on other grounds,* 69 B.R. 6 (S.D.Fla.1986).

Several recent decisions disagree with *Butcher* and treat § 546(a) as a true statute of limitations.  *Amazing Enters. v. Jobin (In re M & L Business Machs.),* 153 B.R. 308, 311 (D.Colo.1993);  *Brandt v. Gelardi (In re Shape, Inc.),* 138 B.R. 334, 337 (Bankr.D.Me.1992);  *see also In re Day,* 82 B.R. 365, 366 (Bankr.E.D.Pa.1988) (considering *Butcher*'s view of § 546(a) as a jurisdictional provision to be gratuitous).  These courts note that the legislative history of § 546(a) refers to the statute as a statute of limitations, but makes no reference to it as a jurisdictional provision.

Other cases add support to this latter view.  In *Smith v. Mark Twain Nat'l Bank,* 805 F.2d 278 (8th Cir.1986), the Eighth Circuit construed § 549(d) of the Code, which is almost identical to § 546(a).[10]  The Eighth Circuit determined that § 549(d) "has nothing

---

[10]Section 549(d) applies to post-petition transactions.  It requires:  "An action or proceeding under this section may not be commenced after the earlier of—(1) two years after the date of transfer sought to be avoided;  or (2) the time the case is closed or dismissed."  11 U.S.C. § 549(d) (1988).  The only

12

to do with the jurisdiction of the United States federal courts."
*Id.* at 294. Similarly, in *Emmons v. Southern Pac. Transp. Co.,* 701
F.2d 1112 (5th Cir.1983), we construed 45 U.S.C. § 56, the
limitations provision of the Federal Employees Liability Act
(FELA). The wording of that statute closely resembles § 546(a).[11]
We interpreted the FELA provision to be a substantive statute of
limitations. *Id.* at 1117-18.

We respectfully disagree with the Sixth Circuit and conclude
that McFarland waived his limitations defense by not raising it in
the trial court. As stated *supra* Part II, the jurisdictional
provision of the bankruptcy courts is found at 28 U.S.C. § 157.
Nothing in the Code or the legislative history suggests otherwise.

*IV. Jury Trial*

McFarland contends that the bankruptcy court improperly
denied him his Seventh Amendment right to a jury trial. McFarland
relies on the Supreme Court's decision in *Granfinanciera,* which
recognized a defendant's right to jury trial in a fraudulent
conveyance action asserted under § 548. 492 U.S. at 64, 109 S.Ct.
at 2802. The bankruptcy court distinguished *Granfinanciera* on the
basis that the only issue before the court was standing and
declined to apply *Granfinanciera* because that decision was
published after the bankruptcy court had announced its findings of

difference between the two statutes is the point at which the two years begins to run.

[11]The first paragraph of the FELA provision states: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56 (1988).

fact and conclusions of law.

The district court affirmed but for different reasons. The district court concluded that McFarland had waived his right to jury trial. The court applied Bankruptcy Rule 9015, which deems a party's right to jury trial waived if the party does not make a demand within ten days after service of the last pleading directed to such issue.[12] Former Bankruptcy Rule 9015 was adapted from Federal Rule of Civil Procedure 38. The district court applied our Rule 38 cases and determined that McFarland had waived his right to jury trial.[13]

---

[12]Bankruptcy Rule 9015 was abrogated in 1987. Before 1987, the Rule provided:

> (b)(1) Time; Form. Any party may demand a trial by jury of any issue triable by a jury by serving on the other parties a demand therefore in writing not later than ten (10) days after service of the last pleading directed to such issue. The demand may be endorsed on a pleading of the party. When a jury trial is demanded, it shall be designated by the Clerk in the docket as a jury matter.
>
> ....
>
> (c) Waiver. The failure of a party to serve a demand as required by this rule and to file as required by Rule 5005 constitutes a waiver of a trial by jury.

Bankr.R. 9015 (abrogated 1987).

[13]A history of the pleadings and relevant motions is helpful at this point:

> —Oct. 15, 1985:  Debtor files complaint against McFarland
>
> —Dec. 19, 1985:  McFarland files Rule 12 motion to dismiss
>
> —Jan. 22, 1986:  McFarland responds to Debtor's request for production

14

The district court applied our decision in *Guajardo v. Estelle,* 580 F.2d 748, 753 (5th Cir.1978), to find waiver. In *Guajardo,* we held that amended pleadings that do not introduce new issues of fact do not renew a right to jury trial that has been waived. *Id.* In this case, however, McFarland never waived his right to jury trial. The last pleading in Rule 38 usually means an answer or a reply to a counterclaim. *McCarthy v. Bronson,* 906 F.2d 835, 840 (2d Cir.), *aff'd,* 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1990). McFarland did not file an answer to the original complaint, but rather filed his answer after the Debtor filed its first amended complaint. Because McFarland filed his jury demand with his original answer, he did not waive his right to jury trial, even though he filed his answer almost seven months after being served with the original complaint.

Nevertheless, McFarland has no right to jury trial in this case because *Granfinanciera* is inapplicable. The question before the bankruptcy court was solely whether the Liquidating Trustee had standing to assert the fraudulent conveyance action. No right to a jury trial arises if no jury issue is presented to the court.

---

—Apr. 25, 1986: McFarland files counterclaim and third-party claim

—May 2, 1986: Debtor amends complaint

—May 8, 1986: McFarland answers and demands jury trial

As an aside, debtor brought the complaint and its first amended complaint by and through the Liquidating Trustee. The second amended complaint, filed on December 20, 1988, substituted the Liquidating Trustee for the debtor as the party asserting the action.

15

*See Brook Mays Music Co. v. National Cash Register Co.,* 838 F.2d 1396, 1399 (5th Cir.1988); *see also Pardini v. Southern Nev. Culinary and Bartenders Pension Plan and Trust,* 733 F.Supp. 1402, 1405 (D.Nev.1990) (noting that when a particular inquiry usually does not require the resolution of factual issues, no right to a jury trial arises). Whether a Plan clearly appoints a stranger as a representative of the estate under § 1123(b)(3)(B) to enforce avoidance actions is generally a question of law. *See Mako,* 985 F.2d at 1054 (listing two-part test); *supra* note 3. Furthermore, both parties in their briefs contend that the Plan is unambiguous. The existence of a factual issue is not readily apparent. We conclude that McFarland had no right to a jury trial over the standing issue presented to the bankruptcy court in the stipulation.

*V. Prejudgment Interest*

McFarland next contends that the bankruptcy court's award of prejudgment interest was error because it was not contemplated by the stipulation. The district court disagreed with McFarland because prejudgment interest is a question of law over which a stipulation is not binding. The district court, however, applied Texas law in its determination. Federal law governs the allowance of prejudgment interest when a cause of action arises from a federal statute. *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.,* 15 F.3d 1275, 1288 (5th Cir.1994). The standard of review for a trial court's award of prejudgment interest is abuse of discretion. *Id.*

16

Federal courts apply a two-step analysis to determine whether an award of prejudgment interest is within a court's discretion: (1) whether the federal act that creates the cause of action precludes such an award; and (2) whether such an award furthers the congressional policies of the federal act. *Id.* The Bankruptcy Code and particularly § 548 are silent with regard to prejudgment interest. The stipulation also is silent with regard to interest. Furthermore, an award of prejudgment interest furthers the congressional policies of the Bankruptcy Code. Section 548 allows the estate to recover fraudulent transfers made within a year before the filing of the bankruptcy petition. The purpose of the Section is to make the estate whole. Prejudgment interest compensates the estate for the time it was without use of the transferred funds. We determine that the bankruptcy court did not abuse its discretion by awarding prejudgment interest.

*VI. Credit for Settling Co-defendant*

Lastly, McFarland contends that the settlement of co-defendant Tondre with the Liquidating Trustee for $10,000 should have been applied against the outstanding judgment under principles of joint and several liability. The district court credited only $500 to the judgment because the Liquidating Trustee offered a copy of the release he executed in support of his response to McFarland's motion. The release states that $500 would be applied to the outstanding judgment and that $9500 serves as a release for possible sanctions from this court for an unauthorized appeal.

The burden of proof is on the party claiming the credit "to

17

show that the damages assessed against it have "in fact and in actuality' been previously covered." *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165, 1171 (5th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983); *see also Cates v. United States,* 451 F.2d 411, 417-18 n. 20 (5th Cir.1971). If the nonsettling defendant is not a party to the settlement negotiations, however, he need only show that the plaintiff settled with another party the claim on which the nonsettling defendant is liable. *U.S. Indus. v. Touche Ross & Co.,* 854 F.2d 1223, 1262 (10th Cir.1988). The burden then shifts to the plaintiff to offer proof that the settlement does not provide him with a double recovery. *McDermott, Inc. v. Clyde Iron,* 979 F.2d 1068, 1080 (5th Cir.1992), *rev'd in part on other grounds sub nom. McDermott, Inc. v. AmClyde,* --- U.S. ----, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1993); *U.S. Indus.,* 854 F.2d at 1262-63. The best way for a plaintiff to satisfy his burden is to offer as proof the written settlement, which should specifically stipulate the allocation of damages to each cause of action. *Hess Oil V.I. Corp. v. UOP, Inc.,* 861 F.2d 1197, 1209 (10th Cir.1988). Should the plaintiff satisfy his burden, the ultimate burden of proof belongs to the nonsettling defendant. *See Wood,* 691 F.2d at 1171; *Cates,* 451 F.2d at 417-18 n. 20.

In this case, McFarland was not a party to the settlement negotiations that resulted in a settlement between the Liquidating Trustee and Tondre. The Liquidating Trustee then offered as proof the settlement, which stipulated the allocation of damages. The

burden returns to McFarland.  He responds by noting that the Fifth Circuit denied the Liquidating Trustee's June 4, 1992 Motion for Sanctions on June 26, 1992.  Furthermore, the Liquidating Trustee executed the release on November 16, 1992, almost five months after we denied the motion for sanctions.  What McFarland suggests is that the release's consideration of the motion for sanctions amounts to fraud.  We refuse to reach such a conclusion absent additional evidence.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.