United States Court of Appeals,
Fifth Circuit.

No. 93-2762.

In the Matter of TEXAS GENERAL PETROLEUM CORPORATION.

Van E. McFARLAND and McFarland & Tondre, Appellants,

v.

Steven A. LEYH, Trustee of the Liquidating Trust of Texas General
Petroleum Corporation, Appellee.

June 1, 1995.

Appeal from the United States District Court for the Southern
District of Texas.

Before POLITZ, Chief Judge, and DUHÉ, Circuit Judge.[1]

DUHÉ, Circuit Judge:

On our own motion we held the mandate in this matter. We
recall our prior opinion[2] and substitute the following:

Appellants Van E. McFarland and McFarland & Tondre (McFarland)
appeal the district court's judgment in favor of Appellee Steven A.
Leyh, Trustee of the Liquidating Trust of Texas General Petroleum
Corp. (Liquidating Trustee). Debtor Texas General Petroleum Corp.
brought this fraudulent conveyance action against McFarland after
the bankruptcy court had confirmed Debtor's Chapter 11 plan of
reorganization. The Liquidating Trustee ultimately asserted the
action in place of Debtor. By stipulation, the only issue at trial

---

[1]The late Judge Goldberg was the third member of the panel.
The decision of the remaining two members of the panel
constitutes a quorum. *See* 28 U.S.C. § 46(d) (1988).

[2]*In re Texas Gen. Petroleum Corp. (McFarland v. Leyh),* 40
F.3d 763 (5th Cir.1994).

1

was whether the Liquidating Trustee had standing to assert the fraudulent conveyance action. The bankruptcy court answered that question in the affirmative, and the district court affirmed. We affirm but for somewhat different reasons.

BACKGROUND

The bankruptcy court confirmed debtor's plan of reorganization under Chapter 11 of the Bankruptcy Code in April 1985. In October of that year, the Liquidating Trustee initiated this fraudulent conveyance action against McFarland. The subject of the suit was a $12,210.25 payment made by Debtor to McFarland for legal services performed for a former officer of Debtor's parent company. The parties stipulated that the only issue was the Liquidating Trustee's standing to assert the action. The Plan gave the Liquidating Trustee authority to assert a list of avoidance actions on behalf of the unsecured creditors. The list, however, did not include the fraudulent conveyance action against McFarland. The bankruptcy court determined that the Plan was ambiguous. Using parol evidence, the court concluded that the parties intended the Liquidating Trustee to have the authority to assert on behalf of the unsecured creditors any causes of action not specifically addressed by the Plan.

The district court affirmed, concluding that the trial court's interpretation of the ambiguous plan was not clearly erroneous. In addition, the district court determined that the bankruptcy court had jurisdiction to adjudicate the dispute, that McFarland was not entitled to a jury trial, and that the bankruptcy court's award of

2

prejudgment interest was not error. During the litigation, co-defendant Brice Tondre settled with the Liquidating Trustee for $10,000. The district court credited only $500 of the settlement payment to the judgment.

DISCUSSION

On appeal, McFarland claims that the Liquidating Trustee lacks standing. In addition, McFarland asserts five other issues: (1) the bankruptcy court lacked jurisdiction; (2) limitations extinguished the avoidance action; (3) McFarland was entitled to a jury trial; (4) the award of prejudgment interest was error; and (5) McFarland should have received full credit for the settlement of his co-defendant. We review findings of fact for clear error and legal conclusions de novo. *Young v. National Union Fire Ins. Co., (In re Young),* 995 F.2d 547, 548 (5th Cir.1993). When the district court has affirmed the bankruptcy court's findings of fact, our review for clear error is strict. *Id.*

*I. Standing*

McFarland first contends that the Liquidating Trustee cannot exercise avoidance powers because it is neither the Debtor nor the Trustee. In this case, the Debtor acted as debtor-in-possession, and the bankruptcy court employed no Trustee. The Plan created the position of Liquidating Trustee.

McFarland's argument runs counter to Section 1123 of the Code, which allows a plan to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, [of any claim or interest

3

belonging to the debtor or to the estate]." 11 U.S.C. § 1123(b)(3)(B) (1988). Section 1123(b)(3)(B) allows a plan to transfer avoidance powers to a party other than the debtor or the trustee. *Briggs v. Kent (In re Professional Inv. Properties of America),* 955 F.2d 623, 626 (9th Cir.), *cert. denied,* --- U.S. ---- , 113 S.Ct. 63, 121 L.Ed.2d 31 (1992); *Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir.1989). We agree with the Ninth and Tenth Circuits that a party other than the debtor or the trustee may be authorized by a plan of reorganization to exercise avoidance powers.

Under Section 1123(b)(3)(B), a party other than the debtor or the trustee that seeks to enforce a claim must show (1) that it has been appointed, and (2) that it is a representative of the estate. *Retail Marketing Co. v. King (In re Mako, Inc.),* 985 F.2d 1052, 1054 (10th Cir.1993); *In re Hunt,* 136 B.R. 437, 444 (Bankr.N.D.Tex.1991). The bankruptcy court's approval of a plan that clearly appoints a stranger to the estate satisfies the first element. *Mako,* 985 F.2d at 1055; *Sweetwater,* 884 F.2d at 1326; *Nordberg v. Sanchez (In re Chase & Sanborn Corp.),* 813 F.2d 1177, 1180 n. 1 (11th Cir.1987). As for the second element, courts apply a case-by-case analysis to determine whether the appointed party's responsibilities qualify it as a representative of the estate. *Sweetwater,* 884 F.2d at 1326-27. "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Id.* at 1327. The reason for the emphasis on unsecured

4

creditors is that the proceeds recovered in an avoidance action satisfy the claims of priority and general unsecured creditors before the debtor benefits. *Id.*

Applying this test the Plan clearly appoints the Liquidating Trustee as a representative of the estate to pursue avoidance actions on behalf of unsecured creditors. Class 5 of the Plan consists of unsecured claimants. The Liquidating Trust is provided for the benefit of Class 5 creditors. Provision 5.5.3 of the Plan establishes the assets of the Liquidating Trust as including "bankruptcy-created or sanctioned causes of action of the debtor-in-possession described or listed in Exhibit B." Exhibit B lists specific avoidance actions. The approved Plan clearly gives the Liquidating Trustee the power to assert avoidance actions. Furthermore, the Liquidating Trustee qualifies as a representative of the estate because the proceeds obtained from its actions benefit the unsecured creditors. We conclude that the Plan gives the Liquidating Trustee authority to enforce avoidance actions on behalf of the estate.

The specific avoidance action that the Liquidating Trustee asserts against McFarland, however, is not found in Exhibit B. McFarland, citing § 1141(b), contends that, because the Plan through Exhibit B does not specifically provide for the fraudulent conveyance action, the ability to exercise that action vests in the debtor.[3] McFarland would apply § 1141(b) rather than use parol

_____

[3]Section 1141(b) provides: "Except as otherwise as provided in the Plan or the order confirming the Plan, the confirmation of a plan vests all of the property of the estate in the debtor."

5

evidence.  The Plan, however, provides the Liquidating Trustee with authority to enforce avoidance actions on behalf of the estate.  Because the Plan otherwise provides, we need not consider the application of § 1141(b).[4]

We apply the rules of contract interpretation to the interpretation of a plan of reorganization.  *See Official Creditors Comm. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.),* 635 F.2d 365, 368 (5th Cir.1981).  The determination of whether a contract is clear or ambiguous is a question of law.  *Id.*  If we determine the contract to be ambiguous, the determination of the parties' intent from parol evidence is a question of fact.[5]  *Id.*

Provision 7.1 of the Plan states:  "The reorganized debtor shall retain that property described on Exhibit "F".  Among the property of the estate hereby distributed to the trust are those claims and causes of action listed or described on Exhibit "B"

---

11 U.S.C. § 1141(b) (1988).

[4]For a debtor to assert an avoidance action postconfirmation, the plan must give the debtor standing to assert the action and the debtor must assert it for the benefit of the estate.  *Harstad v. First Am. Bank,* 39 F.3d 898, 902-03 (8th Cir.1994).  Thus, a debtor cannot assert an avoidance action postconfirmation if the plan does not provide him with the requisite authority to do so.

[5]We require a clear appointment of a stranger to represent the estate in order to protect the unsecured creditors.  *Mako,* 985 F.2d at 1056.  Unsecured creditors want to know whether postconfirmation avoidance actions will be initiated and by whom.  The clear appointment requirement satisfies their concerns.  Neither *Mako* nor the cases it cites, however, require clear evidence of the particular action sought to be enforced.  *Stratford* supplies the additional analysis when, as in this case, the appointment is clear but the Plan is unclear with regard to the particular action sought to be enforced.

(including causes of action created or sanctioned by §§ 542-553)." The parenthetical portion of the provision could describe those avoidance actions listed in Exhibit B. Alternatively, the parenthetical could describe the phrase "[a]mong the property of the estate hereby distributed to the trust." Provision 5.5.3 suggests that Exhibit B contains a complete list of the trust's assets. On the other hand, the use of the word "among" in Provision 7.1 suggests that Exhibit B is not exclusive. We agree with the bankruptcy and district courts that the Plan is ambiguous.

To resolve the ambiguity, the bankruptcy court employed parol evidence to determine the intent of the parties. The court found that those avoidance actions not specifically addressed by the Plan belong to the Liquidating Trust. We see no clear error. Furthermore, the result reached by the court comports with the general policy behind the assertion of avoidance actions. The proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors. 5 Collier on Bankruptcy ¶ 1123.02, at 1123-23 (Lawrence P. King ed., 15th ed. 1994). The Liquidating Trust acts on behalf of the Class 5 unsecured creditors. The proceeds from this fraudulent conveyance action will benefit the Class 5 unsecured creditors. We conclude that the Liquidating Trustee has standing to assert a fraudulent conveyance action against McFarland.

## II. Jurisdiction

McFarland contends that the bankruptcy court lacked subject

matter jurisdiction under Article III of the Constitution to adjudicate this dispute. The district court glossed over this argument by asserting that the bankruptcy court had jurisdiction by virtue of the Plan and 28 U.S.C. § 157(b)(1).[6] McFarland's argument, however, is a constitutional one based on Article III. We must undertake the constitutional analysis.

"[B]ankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy or, in Justice Brennan's words, controversies "at the core of the federal bankruptcy power.' " *In re Wood,* 825 F.2d 90, 96 (5th Cir.1987) (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982) (plurality opinion)). Congress has designated fraudulent conveyance actions as core proceedings. Thus, because bankruptcy courts have the power to adjudicate core proceedings and because fraudulent conveyance actions are labeled as such, a bankruptcy court might assume that it has plenary authority to decide fraudulent conveyance actions. As it turns out, that court would be mistaken.

Whether an Article III court is necessary involves the same inquiry as whether a litigant has a Seventh Amendment right to a jury trial. *In re Clay,* 35 F.3d 190, 194 (5th Cir.1994) (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 53, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989)). In *Granfinanceria,* the Supreme Court

---

[6]Section 157(b)(1) gives the bankruptcy courts jurisdiction over core proceedings. A fraudulent conveyance action is an example of a core proceeding. 28 U.S.C. § 157(b)(2)(H) (1988).

held that litigants in a fraudulent conveyance action have a Seventh Amendment right to a jury trial. *Id.* at 64, 109 S.Ct. at 2802. Under *Granfinanciera,* therefore, McFarland has an Article III right and a Seventh Amendment right to a trial by jury.[7] The existence of McFarland's Article III right, however, does not require us to conclude that the bankruptcy court lacked jurisdiction. Rather, the Article III right merely forecloses the bankruptcy court's ability to exercise full judicial power.

A non-Article III court may act as a adjunct to an Article III court. For example, a bankruptcy court acts as an adjunct to the district court when the bankruptcy court exercises non-core jurisdiction. *See* 28 U.S.C. § 157(c); *cf.* 28 U.S.C. § 636(b) (1988) (giving magistrate judges authority to act as adjuncts of the district court). The Article III court, however, must retain the essential attributes of judicial power. *Marathon,* 458 U.S. at 77, 102 S.Ct. at 2874; *Clay,* 35 F.3d at 192. De novo review over an adjunct's ruling is crucial to maintaining Article III control over an adjunct. *Clay,* 35 F.3d at 193. In this case, the bankruptcy court entered judgment in the fraudulent conveyance action, and the district court affirmed utilizing clear error review. Because the district court did not review the bankruptcy court's judgment de novo, the Article III court did not retain the essential attributes of judicial power.

Nevertheless, a party may waive its constitutional right to

---

[7]For our discussion of McFarland's jury trial right, *see supra* Part IV.

9

an Article III court.  *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 848-50, 106 S.Ct. 3245, 3255-56, 92 L.Ed.2d 675 (1986);  *Pacemaker Diagnostic Clinic of Am. v. Instromedix, Inc.,* 725 F.2d 537, 542-43 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).  We note that the bankruptcy court has statutory authority to enter judgment in non-core matters with the consent of the parties.  28 U.S.C. § 157(c)(2);  *cf.* 28 U.S.C. § 636(c) (allowing magistrates to enter judgment in bench or jury trials with the consent of the parties).

A party who fails to object to a bankruptcy court's assumption of core jurisdiction consents to that court's entry of final judgment.  *Abramowitz v. Palmer,* 999 F.2d 1274, 1279-80 (8th Cir.1993);  *In re G.S.F. Corp.,* 938 F.2d 1467, 1476-77 (1st Cir.1991);  *In re Mann,* 907 F.2d 923, 926 (9th Cir.1990);  *In re Men's Sportswear,* 834 F.2d 1134, 1137-38 (2d Cir.1987);  *DuVoisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 331 (6th Cir.1987).  McFarland did not object to bankruptcy court jurisdiction before or during the hearing on the standing issue. By failing to object in the bankruptcy court, McFarland consented impliedly to the court's assumption of core jurisdiction.  His objection to jurisdiction at this stage "more closely resembles an afterthought than a bona fide objection."  *Men's Sportswear,* 834 F.2d at 1138.  We conclude that McFarland's failure to object to bankruptcy court jurisdiction allowed the court to enter judgment against him.

*III. Statute of Limitations*

10

McFarland contends that the Liquidating Trustee's fraudulent conveyance action is barred by limitations. He points to § 546(a) of the Code, which specifies the limitations period for avoidance actions.[8] McFarland did not raise this defense in either the bankruptcy court or the district court. To circumvent the obstacle of waiver,[9] McFarland contends that § 546(a) is a non-waivable jurisdictional provision. Because the issue of subject matter jurisdiction may be raised at any time, we can reach the merits of McFarland's limitations defense if we determine that § 546(a) is a jurisdictional provision.

*Martin v. First Nat'l Bank (In re Butcher),* 829 F.2d 596, 600 (6th Cir.1987), *cert. denied,* 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1020 (1988), states that § 546(a) is a jurisdictional provision. If an avoidance action is not brought in accordance with § 546(a), the bankruptcy court has no jurisdiction to hear the action. *Id.* A few other courts recognize this view. *In re Railway Reorganization Estate, Inc.,* 133 B.R. 578, 581 (Bankr.D.Del.1991); *In re Frascatore,* 98 B.R. 710, 719 (Bankr.E.D.Pa.1989) (dictum); *In re Oro Import Co.,* 52 B.R. 357, 359 (Bankr.S.D.Fla.1985), *rev'd on other grounds,* 69 B.R. 6 (S.D.Fla.1986).

---

[8]Section 546(a) reads: "An action ... may not be commenced after the earlier of—(1) two years after the appointment of a trustee ... or (2) the time the case is closed or dismissed." 11 U.S.C. § 546(a) (1988).

[9]The parties stipulated before trial that standing was the only issue before the bankruptcy court. A stipulation of issues at trial binds the parties on appeal. *Wilson v. Bailey,* 934 F.2d 301, 305 (11th Cir.1991).

Several recent decisions disagree with *Butcher* and treat §
546(a) as a true statute of limitations. *Amazing Enters. v. Jobin
(In re M & L Business Machs.),* 153 B.R. 308, 311 (D.Colo.1993);
*Brandt v. Gelardi (In re Shape, Inc.),* 138 B.R. 334, 337
(Bankr.D.Me.1992); *see also In re Day,* 82 B.R. 365, 366
(Bankr.E.D.Pa.1988) (considering *Butcher* 's view of § 546(a) as a
jurisdictional provision to be gratuitous). These courts note that
the legislative history of § 546(a) refers to the statute as a
statute of limitations, but makes no reference to it as a
jurisdictional provision.

Other cases add support to this latter view. In *Smith v. Mark
Twain Nat'l Bank,* 805 F.2d 278 (8th Cir.1986), the Eighth Circuit
construed § 549(d) of the Code, which is almost identical to §
546(a).[10] The Eighth Circuit determined that § 549(d) "has nothing
to do with the jurisdiction of the United States federal courts."
*Id.* at 294. Similarly, in *Emmons v. Southern Pac. Transp. Co.,* 701
F.2d 1112 (5th Cir.1983), we construed 45 U.S.C. § 56, the
limitations provision of the Federal Employees Liability Act
(FELA). The wording of that statute closely resembles § 546(a).[11]

---

[10]Section 549(d) applies to post-petition transactions. It
requires: "An action or proceeding under this section may not be
commenced after the earlier of—(1) two years after the date of
transfer sought to be avoided; or (2) the time the case is
closed or dismissed." 11 U.S.C. § 549(d) (1988). The only
difference between the two statutes is the point at which the two
years begins to run.

[11]The first paragraph of the FELA provision states: "No
action shall be maintained under this chapter unless commenced
within three years from the day the cause of action accrued." 45
U.S.C. § 56 (1988).

We interpreted the FELA provision to be a substantive statute of limitations. *Id.* at 1117-18.

We respectfully disagree with the Sixth Circuit and conclude that McFarland waived his limitations defense by not raising it in the trial court. As stated *supra* Part II, the jurisdictional provision of the bankruptcy courts is found at 28 U.S.C. § 157. Nothing in the Code or the legislative history suggests otherwise.

*IV. Jury Trial*

McFarland contends that the bankruptcy court improperly denied him his Seventh Amendment right to a jury trial. As we have already noted, *Granfinanciera* states that a litigant in a fraudulent conveyance action asserted under § 548 has a Seventh Amendment right to a jury trial. *See supra* text accompanying note 7. The bankruptcy court distinguished *Granfinanciera* on the basis that the only issue before the court was standing and declined to apply *Granfinanciera* because that decision was published after the bankruptcy court had announced its findings of fact and conclusions of law.

The district court affirmed but for different reasons. The district court concluded that McFarland had waived his right to jury trial. The court applied Bankruptcy Rule 9015, which deems a party's right to jury trial waived if the party does not make a demand within ten days after service of the last pleading directed to such issue.[12] Former Bankruptcy Rule 9015 was adapted from

---

[12]Bankruptcy Rule 9015 was abrogated in 1987. Before 1987, the Rule provided:

Federal Rule of Civil Procedure 38.  The district court applied our

Rule 38 cases and determined that McFarland had waived his right to

jury trial.[13]

The district court applied our decision in *Guajardo v.*

*Estelle,* 580 F.2d 748, 753 (5th Cir.1978), to find waiver.  In

---

> (b)(1) Time; Form.  Any party may demand a trial by
> jury of any issue triable by a jury by serving on the
> other parties a demand therefore in writing not later
> than ten (10) days after service of the last pleading
> directed to such issue.  The demand may be endorsed on
> a pleading of the party.  When a jury trial is
> demanded, it shall be designated by the Clerk in the
> docket as a jury matter.
>
> ....
>
> (c) Waiver.  The failure of a party to serve a demand
> as required by this rule and to file as required by
> Rule 5005 constitutes a waiver of a trial by jury.

Bankr.R. 9015 (abrogated 1987).

[13]A history of the pleadings and relevant motions is helpful
at this point:

> —Oct. 15, 1985:  Debtor files complaint against
> McFarland
>
> —Dec. 19, 1985:  McFarland files Rule 12 motion to
> dismiss
>
> —Jan. 22, 1986:  McFarland responds to Debtor's request
> for production
>
> —Apr. 25, 1986:  McFarland files counterclaim and
> third-party claim
>
> —May 2, 1986:  Debtor amends complaint
>
> —May 8, 1986:  McFarland answers and demands jury trial

As an aside, debtor brought the complaint and its first
amended complaint by and through the Liquidating Trustee.
The second amended complaint, filed on December 20, 1988,
substituted the Liquidating Trustee for the debtor as the
party asserting the action.

14

*Guajardo,* we held that amended pleadings that do not introduce new issues of fact do not renew a right to jury trial that has been waived. *Id.* In this case, however, McFarland never waived his right to jury trial. The last pleading in Rule 38 usually means an answer or a reply to a counterclaim. *McCarthy v. Bronson,* 906 F.2d 835, 840 (2d Cir.1990), *aff'd,* 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991). McFarland did not file an answer to the original complaint, but rather filed his answer after the Debtor filed its first amended complaint. Because McFarland filed his jury demand with his original answer, he did not waive his right to jury trial, even though he filed his answer almost seven months after being served with the original complaint.

Nevertheless, McFarland has no right to jury trial in this case because *Granfinanciera* is inapplicable. The question before the bankruptcy court was solely whether the Liquidating Trustee had standing to assert the fraudulent conveyance action. No right to a jury trial arises if no jury issue is presented to the court. *See Brook Mays Music Co. v. National Cash Register Co.,* 838 F.2d 1396, 1399 (5th Cir.1988); *see also Pardini v. Southern Nev. Culinary and Bartenders Pension Plan and Trust,* 733 F.Supp. 1402, 1405 (D.Nev.1990) (noting that when a particular inquiry usually does not require the resolution of factual issues, no right to a jury trial arises). Whether a Plan clearly appoints a stranger as a representative of the estate under § 1123(b)(3)(B) to enforce avoidance actions is generally a question of law. *See Mako,* 985 F.2d at 1054 (listing two-part test); *supra* note 5. Furthermore,

15

both parties in their briefs contend that the Plan is unambiguous. The existence of a factual issue is not readily apparent. We conclude that McFarland had no right to a jury trial over the standing issue presented to the bankruptcy court in the stipulation.

*V. Prejudgment Interest*

McFarland next contends that the bankruptcy court's award of prejudgment interest was error because it was not contemplated by the stipulation. The district court disagreed with McFarland because prejudgment interest is a question of law over which a stipulation is not binding. The district court, however, applied Texas law in its determination. Federal law governs the allowance of prejudgment interest when a cause of action arises from a federal statute. *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.,* 15 F.3d 1275, 1288 (5th Cir.1994). The standard of review for a trial court's award of prejudgment interest is abuse of discretion. *Id.*

Federal courts apply a two-step analysis to determine whether an award of prejudgment interest is within a court's discretion: (1) whether the federal act that creates the cause of action precludes such an award; and (2) whether such an award furthers the congressional policies of the federal act. *Id.* The Bankruptcy Code and particularly § 548 are silent with regard to prejudgment interest. The stipulation also is silent with regard to interest. Furthermore, an award of prejudgment interest furthers the congressional policies of the Bankruptcy Code. Section 548 allows

16

the estate to recover fraudulent transfers made within a year before the filing of the bankruptcy petition. The purpose of the Section is to make the estate whole. Prejudgment interest compensates the estate for the time it was without use of the transferred funds. We determine that the bankruptcy court did not abuse its discretion by awarding prejudgment interest.

*VI. Credit for Settling Co-defendant*

Lastly, McFarland contends that the settlement of co-defendant Tondre with the Liquidating Trustee for $10,000 should have been applied against the outstanding judgment under principles of joint and several liability. The district court credited only $500 to the judgment because the Liquidating Trustee offered a copy of the release he executed in support of his response to McFarland's motion. The release states that $500 would be applied to the outstanding judgment and that $9500 serves as a release for possible sanctions from this court for an unauthorized appeal.

The burden of proof is on the party claiming the credit "to show that the damages assessed against it have "in fact and in actuality' been previously covered." *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165, 1171 (5th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983); *see also Cates v. United States,* 451 F.2d 411, 417-18 n. 20 (5th Cir.1971). If the nonsettling defendant is not a party to the settlement negotiations, however, he need only show that the plaintiff settled with another party the claim on which the nonsettling defendant is liable. *U.S. Indus. v. Touche Ross & Co.,* 854 F.2d 1223, 1262

17

(10th Cir.1988).  The burden then shifts to the plaintiff to offer proof that the settlement does not provide him with a double recovery.  *McDermott, Inc. v. Clyde Iron,* 979 F.2d 1068, 1080 (5th Cir.1992), *rev'd in part on other grounds sub nom. McDermott, Inc. v. AmClyde,* --- U.S. ----, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994); *U.S. Indus.,* 854 F.2d at 1262-63.  The best way for a plaintiff to satisfy his burden is to offer as proof the written settlement, which should specifically stipulate the allocation of damages to each cause of action.  *Hess Oil V.I. Corp. v. UOP, Inc.,* 861 F.2d 1197, 1209 (10th Cir.1988).  Should the plaintiff satisfy his burden, the ultimate burden of proof belongs to the nonsettling defendant.  *See Wood,* 691 F.2d at 1171;  *Cates,* 451 F.2d at 417-18 n. 20.

In this case, McFarland was not a party to the settlement negotiations that resulted in a settlement between the Liquidating Trustee and Tondre.  The Liquidating Trustee then offered as proof the settlement, which stipulated the allocation of damages.  The burden returns to McFarland.  He responds by noting that the Fifth Circuit denied the Liquidating Trustee's June 4, 1992 Motion for Sanctions on June 26, 1992.  Furthermore, the Liquidating Trustee executed the release on November 16, 1992, almost five months after we denied the motion for sanctions.  What McFarland suggests is that the release's consideration of the motion for sanctions amounts to fraud.  We refuse to reach such a conclusion absent additional evidence.

CONCLUSION

18

For the foregoing reasons, the district court's judgment is AFFIRMED.